1  JOSEPH A. WALSH II, State Bar No. 143694
   joe.walsh@collierwalsh.com
2  COLLIER WALSH LLP
   One World Trade Center, Suite 1860
3  Long Beach, CA 90831
   Telephone: (562) 317-3300
4  Facsimile: (562) 317-3399

5  Attorneys for Plaintiffs,
   Pacific Maritime Freight, Inc. d/b/a
6  Pacific Tugboat Service ("PTS")

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

| 11  PACIFIC MARITIME FREIGHT, INC., d/b/a PACIFIC TUGBOAT SERVICE ("PTS"),<br><br>Plaintiff,<br><br>v.<br><br>BARGE AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460, IMO # 976) her tackle, furnishings, equipment, fixtures and apparel, *In Rem*; RUBEN GARCIA, an Individual, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC., *In Personam*,<br><br>Defendants. | CASE NO.<br><br>COMPLAINT *IN REM* TO TRY TITLE AND FOR RIGHT OF POSSESSION AND *IN PERSONAM* FOR WRONGFUL DEPRIVATION, TRESPASS, AND CONVERSION OF PROPERTY<br><br>DEMAND FOR JURY TRIAL |
|---|---|

   Plaintiff, PACIFIC MARITIME FREIGHT, INC., d/b/a PACIFIC
TUGBOAT SERVICE files this complaint: (1) *in rem*, against the BARGE
AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460, IMO# 976), her tackle,
furnishings, equipment, fixtures and apparel ("the Barge"), as petitory civil and

1

maritime causes of action to try title and for right of possession; and (2) *in personam* possessory causes of action against Defendants RUBEN GARCIA, an individual, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC. (collectively, the *in personam* defendants are herein referred to as "AEG") for wrongful deprivation, trespass, and conversion of property. In support of this complaint, Plaintiff respectfully alleges the following:

## JURISDICTION AND VENUE

1. Jurisdiction lies under 28 U.S.C. § 1333 and Fed. R. Civ. P. Supp. Rule D, as this is a civil case of admiralty and maritime jurisdiction and is an admiralty and maritime claim within the meaning of Fed. R. Civ. P. Rule 9(h). Supplemental jurisdiction under 28 U.S.C. § 1367 also lies on any non-federal claims as they arise out of the same transaction or occurrence or series of transactions or occurrences as the above claims.

2. Venue lies within the Central District of California pursuant to the provisions of 28 U.S.C. § 1391(b) and Rules D and E of the Supplemental Rules for Certain Admiralty and Maritime Claims.

## PARTIES

3. Plaintiff Pacific Maritime Freight, Inc. d/b/a Pacific Tugboat Service ("PTS") is a corporation organized and existing under the laws of California with its principal office located at 1444 Cesar E. Chavez Parkway, San Diego CA 92113.

4. *In rem* Defendant BARGE AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460, IMO # 976) (the "Barge") is a non-propelled 641 gross registered ton barge which was and remains, at all times material and relevant hereto, owned by Plaintiff PTS as evidenced by a true and correct copy of the U.S. Coast Guard Certificate of Documentation attached hereto as <u>Exhibit A</u>. The Barge is now and during the pendency of this action will be within the Central District.

5. Defendant RUBEN GARCIA, an individual, is a resident of California. On information and belief, he is the President, Owner, Officer, Director

or otherwise a controlling shareholder or officer of Defendants ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

6. Defendant ADVANCED ENVIRONMENTAL GROUP, LLC, is a California Limited Liability Company with its principal place of business at 111 W. Ocean Boulevard, Suite 1550, Long Beach, CA 90802.

7. Defendant ADVANCED CLEANUP TECHNOLOGIES, INC. is a California Corporation with its principal place of business located at 111 W. Ocean Boulevard, Suite 900, Long Beach, CA 90802.

8. On information and belief, AEG owns certain proprietary emissions control technology (the "AMECS" system) which purportedly captures and treats the exhaust emissions from large oceangoing cargo vessels while berthed in the Long Beach and Los Angeles harbors. AEG's technology purports to catch particulate matter and engine exhaust gasses from a cargo vessel's smoke stack before they are released to the atmosphere.

## **OVERVIEW**

9. As more fully described herein, AEG has stolen the Barge from PTS. AEG is presently using the Barge for its own business purposes without consent and to the exclusion of PTS. PTS has demanded that the Barge be returned, but AEG has ignored those demands and continues to maintain wrongful possession, control and use of the Barge.

10. This action is brought to remedy the wrongful acts of AEG; namely (1) to declare PTS is the rightful owner of the Barge and has the right to its possession, (2) to order the immediate return of the Barge to PTS, (3) to recover damages (including costs, attorneys' fees and other expenses) relating to or arising from the conduct of AEG, and (4) to recover punitive damages in an appropriate amount to punish AEG for its wanton, willful and outrageous conduct in taking and refusing to return the Barge to PTS.

COMPLAINT IN REM TO TRY TITLE AND FOR RIGHT OF POSSESSION AND IN PERSONAM FOR WRONGFUL DEPRIVATION, TRESPASS, AND CONVERSION OF PROPERTY

11. This action comes before this Honorable Court following a series of arbitrated disputes between the parties. As a result of the arbitration proceedings, PTS was awarded $765,188.42 against AEG. That award was confirmed in State court and AEG still owes PTS a substantial portion of that judgment. However, notwithstanding the history of prior proceedings and current obligations between the parties, this action arises out of and relates to new issues and activities of AEG with respect to its theft and current possession of the Barge.

## GENERAL FACTS

12. In March 2014, PTS and AEG entered into an agreement (the "Teaming Agreement") wherein PTS, as owner of the Barge, would be the exclusive provider of barge, tugboat, labor and other services in support of AEG's AMECS harbor operations.

13. The Teaming Agreement provided for the placement and installation of an AMECS system on the Barge which would be bareboat chartered from PTS to AEG. The Barge would be moved from ship to ship by PTS tugboats, as required, to enable AEG to provide its filtering services to vessels calling in the local ports.

14. The parties succeeded in establishing an operational AMECS system on the Barge, and AEG commenced servicing of its customer's vessels with PTS providing tug, barge and other services pursuant to the Teaming Agreement.

15. A true and correct copy of the Teaming Agreement is attached hereto as Exhibit B.

16. Shortly thereafter, AEG fell behind in its payment obligations to PTS under the Teaming Agreement and the incorporated Bare Boat Charter of the Barge.

17. Two years later, because of AEG's ongoing failure to make the required payments and the large unpaid balance owing to PTS, the parties revised their March 2014 Teaming Agreement by executing a "First Addendum" dated March 19, 2016. A true and correct copy of the First Addendum is attached hereto as Exhibit C.

18. The First Addendum[1] acknowledged that AEG (then referred to as the "AMECS parties") was in breach, and the parties agreed that in the event of further breaches, PTS would have the right to retake its barge (p.1 ¶ 2):

> "2. PTS will continue to extend credit and provide services to AMECS Parties in accordance with the terms set forth herein. AMECS parties are currently in breach of the payment provisions of the Bare Boat Charter as set forth in PTS's notice of default and right to cure dated February 21, 2017. If, following the execution of this Addendum, AMECS parties comply with all the terms of this Addendum and the Teaming Agreement, PTS shall continue to extend credit and provide services as set forth herein. But if AEMCS parties fail to comply with those terms then PTS shall have the right to immediately cease providing services and to retake its barge and avail itself of all of the remedies set forth in the Bare Boat Charter (including Art. 14), and there shall be no right to cure or obligation to issue a notice of right to cure."

Article 14 of the Bare Boat Charter provided the terms which constituted default and the remedies available to PTS including the right to retake possession.

19. AEG failed to comply with the letter or spirit of the payment plan set out in the First Addendum.

20. By January 2017, AEG's continued failure to make required payments led PTS to initiate mediation before the American Arbitration Association (AAA) pursuant to Sec. 18 of the Teaming Agreement. On February 14, 2017, PTS commenced binding arbitration proceedings with the AAA ("First Arbitration").

21. In early May 2017, while the First Arbitration was pending, PTS and AEG negotiated and signed a Mutual Release and Settlement Agreement ("Settlement Agreement").

22. The Settlement Agreement set out an effective date of April 10, 2017, and, among other provisions, it called for AEG to pay to PTS the sum of

---

[1] It was agreed that the overdue balance due to PTS by AEG at the time the First Addendum was executed was $900,607.72 (First Addendum, ¶ 5).

$900,000.00 immediately upon execution of the Settlement Agreement at which time (1) the Teaming Agreement and First Amendment were deemed to be immediately terminated without any additional compensation due, (2) AEG was to receive title to the Barge; and (3) both parties were to dismiss, with prejudice, their respective claims in the First Arbitration. A true and correct copy of the signed Settlement Agreement is attached hereto as Exhibit D.

23. However, AEG failed to pay PTS the $900,000.00 due immediately upon execution of the Settlement Agreement, and, as a result, both sides continued to proceed with the First Arbitration without objection. Neither party dismissed their respective claims nor were any steps taken to transfer title to the Barge.

24. Following a full day's arbitration hearing on August 11, 2017, Arbitrator Judge Patricia Cowen issued an award in favor of PTS in the amount of $765,188.42, including costs, against AEG ("First Award"). A true and correct copy of the First Award is attached hereto as Exhibit E.

25. A judgment confirming the First Award was issued by the San Diego County Superior Court on January 9, 2018 (the "Judgment"). A true and correct copy of the Judgment is attached hereto as Exhibit F.

26. AEG moved to vacate the Judgment, but its motion was denied on October 11, 2018 by the San Diego Superior Court. A true and correct copy of the Minute Order denying AEG's motion to vacate is attached hereto as Exhibit G.

27. In addition to its efforts to set the Judgment aside, AEG threatened to seek arbitration purportedly under the (failed) Settlement Agreement claiming, *inter alia*, that the parties' signatures constituted its execution and therefore, the Settlement Agreement should be deemed to invalidate the First Award and Superior Court judgment thereon. AEG also asserted that the Settlement Agreement governed the current relationship between the parties.

28. PTS acceded to AEG's renewed arbitration demands and filed a AAA arbitration claim and sought a declaration that the (failed) Settlement Agreement

was void and of no effect and did not undermine the validity of the First Award and Judgment thereon ("Second Arbitration").

29. The arbitrator in the Second Arbitration established a two-phase procedure: Phase 1 to determine whether the Settlement Agreement was valid; and if it was determined that it was valid then Phase 2 would determine AEG's damages, if any, for breach of the Settlement Agreement.

30. On September 25, 2018, Arbitrator Stephen Drummy found the Settlement Agreement to be void and further determined that no agreement exists between the parties. He specifically ruled that there is currently no agreement in place between PTS and AEG for services or for AEG's use or purchase of the Barge. The Arbitrator ruled that:

> With respect to future PTS services and the Tidemar barge, the evidence indicates that no agreement currently exists between PTS and AEG for such services, or AEG's use or purchase of the barge by AEG. Any continued use of this barge by AEG for its AMECS equipment must be pursuant to a mutually agreeable arrangement between the parties or else the AMECS equipment will remain subject to prompt removal at AEG's expense upon written notice from PTS.

A true and correct copy of the Second Arbitration Decision is attached hereto as Exhibit H.

31. On October 15, 2018, PTS offered to allow AEG to use the Barge for a single job on new terms. The terms of the offer contemplated commencement for use of the Barge no sooner than November 1, 2018. Under the terms of the offer, AEG would be required to make weekly rental or charter payments in advance of any use of the Barge. A true and correct copy of PTS' Offer to Rent the Barge is attached hereto as Exhibit I.

32. AEG failed to respond to PTS' offer effectively declining to enter into any new agreement with PTS. As such, AEG was/is still under an obligation to promptly remove its AMECS equipment from the Barge.

33. Using another (non-PTS) tugboat, AEG instead seized the Barge from where it was moored without agreement or permission and now refuses to return it to PTS. AEG has effectively stolen the Barge.

    a. On or about October 17 through October 23, 2018 AEG, without the consent of PTS, used the Barge to service one of its customer vessels.

    b. On or about October 23 through October 27, 2018, AEG, without the knowledge or consent of PTS, arranged for a non-PTS tugboat to take the Barge to work another vessel customer and then took the Barge to another dock under the control of AEG. AEG has now stationed security guards on board to prevent PTS from accessing it.

34. After PTS discovered the theft and determined the location of the Barge, PTS immediately demanded that AEG relinquish control and possession of the Barge back to PTS. AEG has refused and continues to refuse PTS' demand to relinquish control and possession.

35. On October 27, 2018, PTS attempted to have its personnel board its Barge in the Port of Los Angeles, but they were prevented from doing so by security guards hired by AEG. *See* Declaration of Stephen Frailey in Support of Application for Order Authorizing the Issuance of Arrest, filed concurrently herewith.

36. On October 31, 2018, AEG arranged for the same non-PTS tugboat to move the Barge from AEG's berth for its own business purposes including servicing oceangoing vessels, all without the consent of and without any payment of hire to PTS. As of the filing of this complaint, AEG unlawfully maintains possession and control of the Barge.

## FIRST CAUSE OF ACTION

(Petitory Action to Try Title and for Declaration of Right to Possession)

37. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. Plaintiff PTS is the undisputed owner and managing owner of the Barge and holds title and sole right to possession as evidenced by the United States Coast Guard Certificate of Documentation. (Exhibit A)

39. Defendant AEG, without Plaintiff's knowledge or consent, intentionally and wrongfully first took control and possession of the Barge starting on or about October 17, 2018.

40. Plaintiff PTS has demanded that AEG immediately return the Barge, which AEG has failed and refused to do.

41. Defendant AEG has used and deployed the Barge on voyages within the harbor on no less than three separate occasions, each time without consent and in fact against the instructions of the PTS.

42. Defendant AEG continues to exercise possession, dominion and control of the Barge by refusing to return it to PTS, by refusing to allow PTS personnel to board and take possession of the Barge, and by continuing to use the Barge for its own business purposes.

43. By reason of the foregoing, Plaintiff seeks judgment of this Court pursuant to the Fed. R. Civ. P., Supp. Rule D, that PTS has and is entitled to full legal and equitable title to the Barge free and clear of any and all claims by AEG and any and all liens, including any and all encumbrances and/or claims whatsoever incurred or caused by AEG.

44. By reason of the foregoing, PTS seeks further judgment and order of this Court pursuant to the Fed. R. Civ. P, Supp. Rule D, that PTS is entitled to exercise immediate possession of the Barge and that AEG, and each of them jointly and severally, are to (1) immediately cease using the Barge without the express

written consent of PTS; (2) arrange, at their own expense, for the immediate and safe return and relinquishment of the Barge to a location as may be reasonably directed by PTS; (3) refrain from removing any AMECS equipment and/or fixtures from the Barge until such later time as this Court may determine or Order after full briefing and hearing of the issues; and (4) provide financial security in the form of a bond or undertaking acceptable to the Court in the amount of $1,150,000 (which is approximately 1.5 times the value of the First Arbitration Award and Judgment) to stand as alternate security in the event that AEG seeks Court approval for the removal of AMECS equipment from the Barge.

## SECOND CAUSE OF ACTION

(Possessory Action for Possession Following Wrongful Deprivation as to Defendants AEG)

45. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 44 of this Complaint as though fully set forth herein.

46. AEG stole or wrongfully took control and possession of the Barge from PTS and has misappropriated the Barge to AEG's own use.

47. AEG's intentional and wrongful taking possession of and exercising control over the Barge deprived the rightful owner (PTS) of the use and benefit of the Barge.

48. As a proximate result of AEG's actions, PTS has been wrongfully deprived of its rights of ownership, possession, enjoyment and use of its property and is therefore entitled to immediate repossession of the Barge and money damages in amounts according to proof at trial.

## THIRD CAUSE OF ACTION

(Trespass as to Defendants AEG)

49. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 48 of this Complaint as though fully set forth herein.

50. PTS owns the Barge.

51. Without consent from PTS, AEG intentionally boarded and occupied the Barge and caused others to board and occupy the Barge all of whom continue to board and occupy the Barge despite repeated demands from PTS that AEG cease its occupation and permanently disembark its personnel from the Barge.

52. As a direct and proximate cause of AEG's conduct in boarding and occupying the Barge, PTS has been and continues to suffer economic damage in amounts subject to proof at trial.

53. AEG's past and continued conduct in boarding and occupying the Barge constitutes Trespass for which Plaintiff PTS is entitled to recover damages in an amount according to proof at trial.

## FOURTH CAUSE OF ACTION

(Conversion as to Defendants AEG)

54. Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 53 of this Complaint as though fully set forth herein.

55. PTS owns the Barge and as owner PTS has a possessory right to the Barge.

56. The Barge is considered to be the personal property of PTS.

57. AEG has intentionally interfered and continues to interfere with PTS' rights of ownership and possession of the Barge.

58. AEG's continued wrongful exercise of dominion, possession and control of the Barge, including employment of the Barge for its own use, constitutes Conversion for which PTS is entitled to recover damages.

59. As a direct and proximate cause of AEG's Conversion, PTS has suffered and continues to suffer economic damage in an amount subject to proof at trial.

///

**WHEREFORE**, PTS prays for judgment against AEG as follows:

1. That process in the form of law according to the course and practice of this Honorable Court in causes of action of admiralty and maritime jurisdiction issue against Defendant Barge AMECS 1, (a/k/a TIDEMAR) (USCG No. 507460 and IMO # 976) her tackle, furnishings, equipment, fixtures and apparel and all other necessaries thereunder appertaining to or belonging, and that all persons claiming any interest in the Barge be cited to appear and answer under oath, all and singular, matters aforesaid;

2. That this Honorable Court direct the manner in which notice of the commencement of this suit shall be given to the persons onboard the Barge, including and without limitation to any security detail or guards purporting to be caretakers or preventing owners from boarding the Barge;

3. That judgment be entered in favor of PTS declaring that PTS is the sole owner of the Barge and holds all rights to title and interest, both legal and equitable, in the Barge, free and clear of any and all liens and encumbrances, pursuant to Fed R. Civ. P., Supp. Rule D;

4. That an Order for a Warrant of Arrest be issued causing the Barge to be immediately seized by the US Marshal's and thereby relinquished by AEG, for return to the rightful possession of Plaintiff PTS;

5. That judgment be entered in favor of PTS and against AEG, and each of them, for the wrongful deprivation, trespass and conversion of the Barge;

6. For general damages in an amount according to proof at trial;

7. For costs of suit incurred herein;

8. For attorney's fees incurred herein;

9. For *custodia legis* expenses incurred herein;

10. For exemplary and punitive damages as a result of AEG's intentional and wanton theft and disregard of the ownership rights of PTS;

11. Trial by jury on the stated causes of action as permitted by maritime law, and

COMPLAINT IN REM TO TRY TITLE AND FOR RIGHT OF POSSESSION AND IN PERSONAM FOR WRONGFUL DEPRIVATION, TRESPASS, AND CONVERSION OF PROPERTY

12. For such other and further relief as justice may require and/or the court may deem proper.

Dated: November 9, 2018         COLLIER WALSH LLP

By:     /S/ Joseph A. Walsh II
        Joseph A. Walsh II
        Attorneys for Plaintiffs, Pacific Maritime
        Freight, Inc., d/b/a Pacific Tugboat Service
        ("PTS")

## VERIFICATION

I, STEPHEN FRAILEY, declare,

I am the President of Pacific Tugboat Service ("PTS"), the Plaintiff herein. I have read the foregoing Complaint *In Rem* To Try Title and For Right of Possession And *In Personam* For Wrongful Deprivation, Trespass And Conversion of Property And Demand for Jury Trial, and know the contents thereof. The same is true of my own knowledge, except as to those matters which are stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on November 9, 2018 at San Diego, California

_____
STEPHEN FRAILEY