NEIL S. LERNER (SBN 134031)
THOMAS M. FEDELI (SBN 314647)
COX WOOTTON LERNER
GRIFFIN & HANSEN LLP
12011 San Vicente Boulevard, Suite 600
Los Angeles, California 90049
Telephone: (310) 440-0020
Facsimile: (310) 440-0015
Email:  nsl@cwlfirm.com
        tfedeli@cwlfirm.com

Attorneys for Defendants and Counterclaimants,
RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and
ADVANCED CLEANUP TECHNOLOGIES, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC MARITIME FREIGHT, INC. d/b/a PACIFIC TUGBOAT SERVICE,<br><br>Plaintiff,<br><br>vs.<br><br>BARGE AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460 IMO # 976) her tackle, furnishings, equipment, fixtures, and apparel, *In Rem*; and RUBEN GARCIA, an Individual, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC., *In Personam*,<br><br>Defendants.<br><br>RUBEN GARCIA, an Individual, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.<br><br>Counterclaimants, | Case No. 18-cv-09548-RGK-PJW<br><br>**IN ADMIRALTY**<br><br>**VERIFIED COUNTERCLAIM FOR:**<br>1) **Violations Pursuant to Lanham Act 15 U.S.C. 1125 § 43(a);**<br>2) **Violations Pursuant to California Business & Professions Code § 17200 et seq.**<br>3) **Intentional Interference with Contractual Relations**<br>4) **Intentional Interference with Prospective Economic Relations**<br>5) **Negligent Interference with Prospective Economic Relations;**<br>6) **Conversion;**<br>7) **Trespass to Chattels;**<br>8) **Unjust Enrichment**<br>9) **Enforcement of Maritime Lien;**<br>10) **Petition for Possession of Maritime Property** |

1

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED
ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

| | |
|---|---|
| 1 | vs. |
| 2 | |
| 3 | BARGE AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460 IMO # 976) her |
| 4 | tackle, furnishings, equipment, fixtures, and apparel, *In Rem*; and PACIFIC |
| 5 | MARITIME FREIGHT, INC. d/b/a |
| 6 | PACIFIC TUGBOAT SERVICE |

7
8        Defendants/Counterclaimants, Ruben Garcia, Advanced Environmental Group,
9  LLC ("AEG"), and Advanced Cleanup Technologies, Inc. ("ACTI") (collectively,
10 "Defendants/Counterclaimants") allege the following, based on information and belief:

## JURISDICTION AND VENUE

11
12     1.    This Court has jurisdiction over the subject matter of this action under 28
13 U.S.C. §§ 1331 and 1333, and 15 U.S.C. § 1121. This Court has supplemental
14 jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.
15     2.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because
16 PTS is located in this District.
17     3.    This is an admiralty and maritime claim within the meaning of Federal Rule
18 of Civil Procedure 9(h) and Supplemental Rule D of the Supplemental Rules for
19 Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

## PARTIES

20
21     4.    Defendant/Counterclaimant Ruben Garcia is a resident of California, and
22 President and CEO of AEG and ACTI.
23     5.    Defendant/Counterclaimant AEG is a California limited liability company
24 with its principal place of business at 111 W. Ocean Blvd., Suite 1550, Long Beach,
25 California 90802.
26     6.    Defendant/Counterclaimant ACTI is a California corporation with its
27 principal place of business at 111 W. Ocean Blvd., Suite 1550, Long Beach, California
28 90802.

COX, WOOTTON, LERNER
12011 SAN VICENTE BOULEVARD, SUITE 600
LOS ANGELES, CALIFORNIA 90049
TELEPHONE 310-440-0020

7. Plaintiff/Counter-Defendant PTS is a California corporation with its principal place office located at 1444 Cesar E. Chavez Parkway, San Diego, CA 92113.

8. Defendant/Counter-Defendant BARGE AMECS 1 (a/k/a "TIDEMAR) (USCG No. 507460 IMO # 976) is a non-propelled 641 gross registered ton barge owned by PTS, and currently within this Central District of California.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

9. In or about November 2018, PTS caused to be arrested the *in rem* Defendant to this lawsuit, BARGE AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460 IMO # 976) her tackle, furnishings, equipment, fixtures, and apparel.

10. Defendants/Counterclaimants do not dispute PTS is the documented owner of BARGE AMECS 1 (a/k/a "TIDEMAR") (USCG No. 507460 IMO # 976) ("Barge"). However, PTS does not own certain equipment stationed thereon, the value of which greatly exceeds the value the Barge, as set forth, *infra*.

11. Defendants/Counterclaimants own certain proprietary emissions control technology ("AMECS"), which is approved by the California Air Resources Board ("CARB") to capture and treat the exhaust emissions from large oceangoing cargo vessels berthed in the Los Angeles and Long Beach harbors. AMECS assists vessel owners to meet stringent emissions requirements, the non-compliance of which results in costly fines to vessel owners.

12. AMECS was, at all relevant times, and is semi-permanently affixed to the Barge.

13. In or about February 2014, Defendants/Counterclaimants paid approximately $118,348.12 for structural and non-structural improvements to the Barge.

14. The February 2014 improvements permitted the Barge to adequately house AMECS and facilitate its use.

15. Thereafter, in or about March 2014, Defendants/Counterclaimants installed AMECS on the Barge.

3

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

16. Prior to installing AMECS on the Barge, the Barge was valued at approximately $150,000.

17. After the February 2014 structural and non-structural improvements to the Barge, for which Defendants/Counterclaimants paid in full, the Barge was valued at approximately $265,000. The approximate $265,000 post-improvements value of the Barge does not account for the value of AMECS, which greatly exceeds the value of the Barge.

18. AMECS is currently valued in excess of $10,000,000.

19. In or about March 2014, Defendants/Counterclaimants and PTS entered a charter agreement for Defendants/Counterclaimants' use of the Barge. At that time, and currently, PTS was the documented owner of the Barge, and Defendants/Counterclaimants owned AMECS installed thereon.

20. The agreements comprising the charter for the Barge included a non-compete agreement, whereby PTS agreed to not use proprietary information associated with AMECS to compete with Defendants/Counterclaimants. The non-compete provision is set to expire in March 2019.

21. From March 2014 until the November 2018 arrest of the Barge, Defendants/Counterclaimants used AMECS to capture and treat exhaust emissions from cargo vessels berthed in Los Angeles and Long Beach harbors, which was the Barge's exclusive use and function during that period.

22. On or about October 30, 2018, PTS invoiced Defendants/Counterclaimants for charter hire of the Barge for November 2018, which Defendants/Counterclaimants paid the same day via wire transfer to PTS.

23. Several days after wire transfer posted, PTS issued a return wire for the November 2018 charter hire of the Barge, and subsequently had the Barge arrested.

24. The Barge and AMECS is currently held with substitute custodian, Nielsen Beaumont Marine, Inc. at its berth in Long Beach, California.

4

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

25. At the time PTS arrested the Barge in or about November 2018, PTS knew Defendants/Counterclaimants owned AMECS. PTS also knew Defendants/Counterclaimants were actively employing AMECS to service cargo vessels berthed in harbors of Los Angeles and Long Beach.

26. Since the November 2018 arrest of Barge, PTS has refused to permit Defendants/Counterclaimants to use, access, or remove AMECS from the Barge, although duly demanded.

27. On or about November 7, 2018, PTS demanded Defendants/Counterclaimants remove AMECS from the Barge.

28. PTS knew or had reason to know that uninstalling and offloading AMECS would likely take several weeks.

29. Less than one (1) week after PTS demanded removal of AMECS from the Barge, PTS caused the Barge to be arrested.

30. At the time of the arrest, PTS knew or had reason to know that Defendants/Counterclaimants had not had the opportunity to uninstall and offload AMECS from the Barge.

31. PTS is aware the Defendants/Counterclaimants were made to forfeit substantial business as a result of the arrest due to Defendants/Counterclaimants' inability to fulfil existing contracts to service cargo vessels with AMECS.

32. PTS had no grounds to believe Defendants/Counterclaimants would seek to move the Barge from the harbors of Los Angeles and Long Beach because Defendants/Counterclaimants employed AMECS in those harbors exclusively. Indeed, since Defendants commenced the charter of the Barge in March 2014, the Barge has not left this Judicial District.

33. PTS had no basis, legal or otherwise, to arrest the Barge with AMECS installed thereon.

34. PTS has no basis, legal or otherwise, to refuse Defendants/Counterclaimants permission to access AMECS and remove it from the Barge.

35. PTS, by and through an affiliated company and/or agent, Aeras Innovations, LLC ("Aeras"), falsely advertises to Defendants/Counterclaimants' existing customers, potential future customers, and to the general public (1) it is CARB approved to capture and treat vessel emissions, (2) it currently has vessel emissions capture technology for immediate use, and (3) it currently is capable of operating vessel emissions capture technology.

36. It is believed PTS knowingly arrested the Barge with AMECS thereon for the improper purpose of accessing AMECS to reproduce the technology for its financial benefit and gain, or some other improper and/or illegal purpose.

### FIRST CAUSE OF ACTION

(Violations Pursuant to Lanham Act 15 U.S.C. 1125 § 43(a) against PTS)

37. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-37 of this Counterclaim, as though fully set forth herein.

38. Since the November 2018 arrest of the Barge, Defendants/Counterclaimants have not had access to the Barge or AMECS, which it owns.

39. PTS's false advertising, as set forth, *supra*, violates § 43(a) of the federal Lanham Act, 15 U.S.C. 1125.

40. PTS's false advertising takes place within the context of interstate commerce, to wit, the interstate and international ocean transport of goods.

41. PTS's false advertising is likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association of PTS with CARB-approved vessel emissions capture providers.

42. PTS's false advertising is likely to cause confusion or mistake, or to deceive as to whether PTS, or its affiliate company and/or agent, Aeras, is CARB-approved, or

6

sponsored by CARB, to engage in the above-described vessel emissions capture services.

43. PTS's false advertising to Defendants/Counterclaimants existing and potential customers has caused and is likely to further cause economic damages to Defendants/Counterclaimants through loss of business, loss of reputation, or otherwise.

## SECOND CAUSE OF ACTION
(Violations Pursuant to California Business & Professions Code § 17200 *et seq.* against PTS)

44. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-43 of this Counterclaim, as though fully set forth herein.

45. PTS's false advertising, as set forth in the preceding paragraphs, constitutes unfair competition as defined in California Business & Professions Code §§ 17200 and 17500.

46. PTS's false advertising violates California Business & Professions Code § 17200, *et seq.*

47. Defendants/Counterclaimants suffered injury and lost money as a result of PTS's unfair competition in the form of lost revenue, lost future revenue, and lost commercial good will. Defendants/Counterclaimants lost money will be proven with reasonable certainty at trial.

48. PTS's unfair competition, as set forth above, must be enjoined pursuant to California Business & Professions Code § 17203.

## THIRD CAUSE OF ACTION
(Intentional Interference With Contractual Relations against PTS)

49. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-49 of this Counterclaim, as though fully set forth herein.

50. Various contracts existed between Defendants/Counterclaimants and third-party vessel owners for Defendants/Counterclaimants' use of AMECS to perform

emissions capture on vessels in the harbors of Los Angeles and Long Beach in exchange for monetary compensation.

51. PTS knew of one or more of these contracts.

52. By arresting the Barge with Defendants/Counterclaimants' AMECS thereon, PTS prevented Defendants/Counterclaimants from performing on these contracts.

53. PTS's conduct was intended to disrupt Defendants/Counterclaimants' performance under the contracts.

54. PTS's knew that its arrest of the Barge with AMECS thereon would disrupt Defendants/Counterclaimants' performance under the contracts.

55. Defendants/Counterclaimants' inability to perform under the various contracts with vessel owners as a result of PTS's conduct harmed Defendants/Counterclaimants because they lost revenue thereby.

## FOURTH CAUSE OF ACTION

(Intentional Interference with Prospective Economic Relations against PTS)

56. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-55 of this Counterclaim, as though fully set forth herein.

57. Defendants/Counterclaimants were in economic relationships with existing clients that would have resulted in economic benefit to Defendants/Counterclaimants.

58. PTS knew of these relationships.

59. By arresting the Barge with AMECS thereon, PTS intended to disrupt the relationships between Defendants/Counterclaimants and the multiple vessel owners requiring their services.

60. The economic relationships between Defendants/Counterclaimants and various vessel owners were disrupted as a result of PTS's conduct.

61. As a result, Defendants/Counterclaimants suffered substantial harm in the form of lost revenue, lost future revenue, and lost commercial good will.

///

8

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

## FIFTH CAUSE OF ACTION

(Negligent Interference with Prospective Economic Relations against PTS)

62. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-61 of this Counterclaim, as though fully set forth herein.

63. PTS knew Defendants/Counterclaimants were in economic relationships with existing clients that would have resulted in economic benefit to Defendants/Counterclaimants.

64. PTS knew or should have known that these relationships would be disrupted if PTS arrested the Barge with the AMECS thereon, thereby depriving Defendants/Counterclaimants access and use of AMECS, which they owned.

65. PTS arrest of the Barge with the AMECS thereon constituted a failure to act with reasonable care, which resulted in substantial harm to Defendants/Counterclaimants.

## SIXTH CAUSE OF ACTION

(Conversion against PTS)

66. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-65 of this Counterclaim, as though fully set forth herein.

67. In arresting the Barge with AMECS thereon, PTS wrongfully exercised control over AMECS, which Defendants/Counterclaimants own.

68. Defendants/Counterclaimants did not consent to PTS's conduct as alleged herein.

69. Defendants/Counterclaimants were harmed and have suffered damages in an amount to be proven at trial.

70. PTS's conduct was and is a substantial factor in causing Defendants/Counterclaimants' harm.

///

///

///

9

## SEVENTH CAUSE OF ACTION

(Trespass to Chattels against PTS)

71. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-70 of this Counterclaim, as though fully set forth herein.

72. Defendants/Counterclaimants own and have the right to possess AMECS.

73. PTS intentionally interfered with Defendants/Counterclaimants' use and possession of AMECS when it arrested the Barge with AMECS installed thereon.

74. Defendants/Counterclaimants did not consent to PTS's conduct, and was harmed thereby.

## EIGHTH CAUSE OF ACTION

(Unjust Enrichment against PTS)

75. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-74 of this Counterclaim, as though fully set forth herein.

76. Defendants/Counterclaimants' payment of $118,348.12 for structural and non-structural improvements to the Barge conferred a benefit on PTS.

77. PTS voluntarily accepted and retains the benefit of such structural and non-structural improvements to the Barge for which Defendants/Counterclaimants paid.

78. PTS's retention of the benefit of the improvements to the Barge is inequitable unless PTS pays to Defendants/Counterclaimants the value of said benefit.

79. PTS has been unjustly enriched as a result of the foregoing.

80. Defendants/Counterclaimants are entitled to damages as a result of PTS's unjust enrichment.

## NINTH CAUSE OF ACTION

(Enforcement of Maritime Lien Against the Barge, *in rem*)

81. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-80 of this Counterclaim, as though fully set forth herein.

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

82. Defendants/Counterclaimants' payment of $118,348.12 for structural and non-structural improvements to the Barge constituted payment pursuant to a maritime contract.

83. Defendants/Counterclaimants have a maritime lien against the Barge for necessaries.

84. Defendants/Counterclaimants seek to enforce their maritime lien against the Barge pursuant to Rule C of the Supplemental Rules for Admiralty or Maritime Claims.

## TENTH CAUSE OF ACTION

(Petition for Possession of Maritime Property)

85. Defendants/Counterclaimants incorporate by reference the allegations of paragraphs 1-84 of this Counterclaim, as though fully set forth herein.

86. Pursuant to Rule D of the Supplemental Rules of Civil Procedure for Admiralty and Maritime Claims, Defendants/Counterclaimants are entitled to bring an action for possession of AMECS.

87. PTS has continued to exercise possession over AMECS, which rightfully should be under the direction and control of Defendants/Counterclaimants.

88. Defendants/Counterclaimants requests and Order from this Court declaring Defendants/Counterclaimants' right to possession of AMECS.

WHEREFORE, Defendants/Counterclaimants pray for the following relief with respect to the Counterclaim:

A. Judgment be entered in favor of Defendants/Counterclaimants on this Counterclaim;

B. On Causes of Action 1-9, damages according to proof at trial;

C. PTS's unfair competition as set forth in Cause of Action 2 be enjoined;

D. As to Cause of Action 10, that the Court determine the possessory rights of the AMECS on an expedited basis;

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

E.   Attorneys' fees and costs;

F.   Prejudgment interest on all sums that shall be adjudged to be owed Defendants/Counterclaimants; and

G.   Such other and further relief as this Court deems just and proper.

DATED: November 19, 2018

COX WOOTTON LERNER
GRIFFIN & HANSEN, LLP


By: /s/ *Neil S. Lerner*
    NEIL S. LERNER
    THOMAS M. FEDELI
    Attorneys for Defendants/Counterclaimants RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.

## VERIFICATION

I, Ruben Garcia, declare:

I am the President and CEO of Advanced Environmental Group, LLC ("AEG"), and Advanced Cleanup Technologies, Inc. ("ACTI"). I, along with AEG and ACTI, are the Defendants and Counterclaimants in this litigation. I have read the foregoing Counterclaim and know the contents thereof. The facts set forth therein are true and accurate based on my personal knowledge, information and belief.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

///

Dated: 11-19, 2018 at LOS ANGELES, California.

_____
Ruben Garcia

14

VERIFIED COUNTERCLAIM OF DEFENDANTS/COUNTERCLAIMANTS RUBEN GARCIA, ADVANCED ENVIRONMENTAL GROUP, LLC, and ADVANCED CLEANUP TECHNOLOGIES, INC.